NOTICE
Decision filed 12/03/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 241075-U

NOS. 5-24-1075, 5-24-1076 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | Nos. 23-CF-552, 24-CF-461 |
| | ) | |
| | ) | |
| CHARLES HAZELBAKER, | ) | Honorable |
| | ) | Robert E. McIntire, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice McHaney and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Appeal No. 5-24-1075 dismissed where the State failed to file a verified petition for detention in Vermilion County case No. 23-CF-552. We affirm appeal No. 5-24-1076 where the circuit court's factual findings were not against the manifest weight of the evidence and the circuit court's ultimate determination to deny defendant pretrial release was not an abuse of discretion.

¶ 2    The defendant, Charles Hazelbaker, appeals the July 10, 2024, and October 1, 2024, orders of the circuit court of Vermilion County that granted the State's petition to deny him pretrial release and ordered him detained pending trial. Defendant filed a motion for relief on September 27, 2024, which was denied on October 1, 2024. Defendant filed a timely notice of appeal utilizing the Notice of Pretrial Fairness Act Appeal 604(h) (Defendant as Appellant) standardized form provided by the Illinois Supreme Court. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). On appeal, the Office of

1

the State Appellate Defender (OSAD), was appointed to represent defendant. OSAD did not file a memorandum, nor did OSAD file a notice in lieu of Rule 604(h)(7) memorandum. We acknowledge that the defendant is not required to file a memorandum, and the motion for relief will represent defendant's argument on appeal. Defendant filed two separate appeals in the matters of 5-24-1075[1] and 5-24-1076. We consolidated these matters for decision only. For the reasons that follow, we dismiss appeal No. 5-24-1075 and affirm appeal No. 5-24-1076.

¶ 3                                    I. BACKGROUND

¶ 4      On September 8, 2023, the State charged defendant by information with one count of aggravated arson, a Class X felony. The information alleged that defendant, while committing an arson, knowingly damaged the building of Chuck Hazelbaker, when he reasonably should have known that Chuck Hazelbaker and Kaycee Amos were present therein. See 720 ILCS 5/20-1.1(a)(1) (West 2022). On September 8, 2023, the trial court set bond at $150,000. On September 22, 2023, a grand jury indicted defendant of the same. Bond remained fixed at $150,000. Defendant ultimately pleaded guilty to arson, a Class 2 felony, on April 3, 2024. See *id.* § 20-1(a)(1). Defendant was sentenced to 24 months of probation and, relevant to this appeal, was ordered to have no contact with Chuck Hazelbaker.

¶ 5      On July 9, 2024, the State filed a "petition to revoke sentence,"[2] noting that defendant violated his sentence when he committed new offenses. On July 9, 2024, the State charged defendant by information with criminal trespass to residence, a Class 4 felony. The information alleged that defendant knowingly and without authority entered the residence of his father, Charles Hazelbaker (hereinafter "Chuck"). See *id.* § 19-4(a)(2). A second count charged defendant with

---

[1]Appellate case No. 5-25-1075 corresponds to the lower court case No. 23-CF-552, and appellate case No. 5-24-1076 corresponds to the lower court case No. 24-CF-461.

[2]For purposes of this appeal, we will treat the "petition to revoke sentence" as a "petition to revoke probation."

criminal damage to property, a Class A misdemeanor. The information alleged that defendant knowingly and without consent of the owner damaged the door and window of the property of Chuck Hazelbaker. See *id.* § 21-1(a)(1). On July 18, 2024, a grand jury indicted defendant of the same.

¶ 6    The State did not file a petition to deny pretrial release in 23-CF-552. The State filed a petition to deny pretrial release in 24-CF-461. The petition alleged that defendant was charged with a detainable offense and posed a real and present threat to the safety of any person or persons or the community, and no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community. The petition alleged that defendant was charged with a felony which involved a threat of great bodily harm. The petition indicated "see Exhibit A" which was a letter from "Angel" indicating that defendant was "having extreme mental health issues." The letter stated: "Charles Hazelbaker's mother called and stated that her son is having extreme mental health issues. She stated that he needs help and is a danger to himself and the people around him. She asserts that Charles is claiming to be the Messiah and needs to kill his father to save the world from evil, further believing that people are putting spells on him."

¶ 7    On July 10, 2024, the circuit court held a detention hearing on the offenses in 24-CF-461. The court indicated that it heard the "petition to deny pretrial release" for 24-CF-461 and the "petition to revoke pretrial release" in 24-CM-209, which is not the subject of this appeal. As to the charges in 24-CF-461, the State proffered that officers responded to the home of Chuck Hazelbaker, where defendant kicked in the door of the property, broke a window, and screamed about "black babies and killing black babies." Chuck Hazelbaker was the victim of defendant's arson probation case. Law enforcement received contact from defendant's parents raising concerns about defendant's mental health. Defendant's father "indicated that the defendant believes himself

3

to be the messiah" and defendant's father "is the devil and needs to be killed." The State proffered that there were "significant concerns for the safety of the victims in this case that cannot be remedied simply with GPS."

¶ 8 Turning to the arson case, the State proffered that "one of the conditions of probation was that [defendant] should have no contact with Chuck Hazelbaker or Kaycee Amos." In acquiring new offenses, defendant "attempted to make contact" with those individuals. Another condition of defendant's probation was not to enter Chuck's property, which defendant did in the commission of the new offenses.

¶ 9 Following argument from the parties, related to 24-CF-461, the circuit court determined that the proof was evident and presumption great that defendant committed an offense that qualified for detention, namely, criminal trespass to residence. The court determined that "under the facts of this case would be a felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement." The court determined that defendant posed a real and present threat to the safety of his parents, and there were no conditions or combination of conditions that could mitigate the threat. The court noted that defendant violated pretrial release orders and his probation, which "suggest that [defendant] cannot be trusted with respect to adhering to limitations on his behavior." Therefore, in 24-CF-461, the court granted the petition to deny pretrial release.

¶ 10 Following the court's determination, the State asked: "Your Honor, just for the record, the State would ask that he also be placed on pretrial release in 23-CF-552 because obviously it's a PTR case." The court responded: "So in that proceeding, Mr. Hazelbaker, your petition to revoke your probation was filed by the People. It does allege that violations are that you've committed the offense of theft and trespass in 24-CM-209 and then the offenses that have been charged in 24-

4

CF-461, the Public Defender's Office will be appointed ***." Later in the hearing, the public defender stated: "Given the Court's ruling this morning in 24-CF-461 and the basis for the petition in 23-CF-552, I am asking, for the time being, anyway, that [defendant] be detained in 23-CF-552. It will be for the same basis." The State did not object. The court ruled: "[R]ather than releasing you, [defendant], on 23-CF-552, he will be ordered to be detained." The public defender, on the record, indicated that he reserved the right "to ask for that to change should something change with the order in 24-CF-461."

¶ 11 The court denied release in 24-CF-461. In its written order, the court found the dangerousness standard met. The court further found release should be denied due to the nature and circumstances of the offenses charged; defendant's prior criminal history is indicative of violent, abusive, or assaultive behavior; defendant's psychological, psychiatric, or other social history indicates a violent, abusive, or assaultive nature; the identity of any person(s) to whose safety defendant is believed to pose a threat and the nature of the threat, any statements made by or attributed to the defendant, together with circumstances surrounding them; and at the time of the current offense, defendant was on probation.

¶ 12 Regarding 23-CF-552, under the section for the court's reasons for concluding that defendant should be denied pretrial release, the court handwrote: "Defendant volunteers for and consents to a denial of release prior to hearing on PTR and without a basis for State to seek a denial of release." The circuit court entered a no contact order as a condition of release for Chuck Hazelbaker.

¶ 13 On September 27, 2024, defendant filed a motion for relief. In the motion for relief, defendant argued that the State's proffer fell short of clear and convincing evidence that defendant

5

committed a Class 4 criminal trespass to residence. Defendant also argued that criminal trespass to residence did not constitute a forcible felony.

¶ 14    The circuit court held a hearing on the motion for relief on October 1, 2024. The court noted that the "big picture" was that defendant was not supposed to be on the property or near his family at all, and defendant violated the orders of the court by doing so. The circuit court denied the motion for relief. The court indicated that the "detention in 23 CF 552 at this point is voluntarily done so that credit for time served can be accumulated in that file as well as the other file. The order is clear that was entered in 23 CF 552. And I would expect that if [defendant] does receive relief on 24 CF 461, that that will also apply in 23 CF 552."

¶ 15    Defendant timely appealed on October 2, 2024.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent defendant. OSAD did not file a memorandum, nor did OSAD file a notice in lieu of Rule 604(h)(7) memorandum. We acknowledge that the defendant is not required to file a memorandum, and the motion for relief will represent defendant's argument on appeal. "Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Therefore, our review is limited to the issues raised by defendant in his motion for relief.

¶ 18    As an initial matter, we turn our attention to the charges in 23-CF-552. On April 3, 2024, defendant pleaded guilty in 23-CF-552 to the offense of arson, a Class 2 felony. Defendant was sentenced to 24 months of probation and, relevant to this appeal, no contact with Chuck Hazelbaker. On July 9, 2024, the State filed a "petition to revoke sentence," noting that defendant violated his sentence when he committed the new offense of criminal trespass to residence, a Class

6

4 felony, charged in 24-CF-461. The State did not, however, file a verified petition to deny or revoke pretrial release on 23-CF-552. According to section 110-6.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1 (West 2022)), the filing of a verified petition by the State is a prerequisite to deny a defendant pretrial release. Here, the State filed no such petition. As such, we dismiss defendant's appeal in No. 5-24-1075, where the State failed to file a petition to deny pretrial release.

¶ 19    Turning to the criminal trespass to residence charges in 24-CF-461, in the motion for relief, defendant argued that the State's proffer fell short of clear and convincing evidence that defendant committed a Class 4 criminal trespass to residence. Defendant also argued that criminal trespass to residence did not constitute a forcible felony. We disagree.

¶ 20    Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person;[3] (4) the nature and

---

[3]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the

seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 21 Our standard of review of pretrial release determinations is twofold. The circuit court's factual findings will be reviewed under the manifest weight of the evidence standard, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously ordered conditions of pretrial release. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 22 The circuit court's ultimate determination regarding the denial of pretrial release is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. "An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the circuit court." *People v. Heineman*, 2023 IL 127854, ¶ 59.

¶ 23 We have thoroughly reviewed the record on appeal in this matter. While we recognize that criminal trespass to residence is not enumerated as a forcible felony, the offense may fall under the residual clause as "any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement." 725 ILCS 5/110-6.1(a)(1.5) (West 2022). The

defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

circuit court found that such circumstances existed here, where it heard a proffer from the State that included, *inter alia*, the defendant was ordered not to have contact with his father as a term of his probation in 23-CF-552, yet defendant trespassed on his father's property, kicked in a door, and broke a window while screaming about killing babies. The court heard evidence that defendant suffered from mental illness and threatened to kill his father. The circuit court made an individualized finding to deny pretrial release to the defendant after considering the facts presented, the pretrial investigation report, arguments made by counsel, and the statutory factors. Based on the record before us, we cannot find that the court's well-reasoned order related to conditions was in error.

¶ 24    Therefore, in light of our review of the record, we find that the circuit court's factual findings were not against the manifest weight of the evidence and the circuit court's ultimate determination to deny the defendant pretrial release was not an abuse of discretion.

¶ 25                                III. CONCLUSION

¶ 26    Accordingly, we dismiss appeal No. 5-24-1075. We affirm the Vermilion County circuit court's orders of July 10, 2024, and October 1, 2024, in appeal No. 5-24-1076.

¶ 27    No. 5-24-1075, Dismissed.

¶ 28    No. 5-24-1076, Affirmed.

9